Nott, J.,
delivered the opinion of the court:
The means provided for reviewing the decisions of this court consist entirely of “ a finding of the facts established by the *569 evidence in the nature of a special verdict, but not the evidence establishing them.” (Supreme Court, Rule 1, regulating appeals from the Court of Claims.) From the first appeals that went up to the Supreme Court (Adams’s and other motions, 7 C. Cls. R., 11; Clark’s Case, ib., 32) down to the last term, (Paymaster Clark’s Case, ante, p. 60,) the questions which can or cannot be reviewed by special verdict, and the matters which should' or should not be set forth in the findings, have furnished a vexatious subject of dispute and doubt. It now seems desirable to clear away this obscurity, if possible, and ascertain what questions must be excluded from the consideration of the appellate court, if special verdict be the only means for reviewing a decision.
Special verdict is probably as-old as trial by jury. As early as the reign of Edward I, (2 Westm., 13 Edw. I, c. 30,) it was a subject of statutory enactment, being made the right of the jury, lest they should be attainted for rendering a false verdict in eases where they were doubtful of the law. In modern practice it is ordinarily a matter of mutual arrangement, where the facts are simple and the questions of law novel or obscure. Of late years it has well-nigh gone out of use in this country, having given place to an agreed statement of the case, or to a general verdict subject to the opinion of the court; and there are many American lawyers of large practice who have never seen a special verdict rendered. Though easily defined to be a statement of facts free from evidence on the one hand, and from argument or conclusions of law on the other, (2 Roll. Abr., 693, 8. & T.,) the practical application of these conditions frequently requires the same precise intellectual analysis of a case that was formerly required in the refinements of special pleading. In an early case the jury find of a farmer that, in addition to his occupation of farming, “he likewise bought of other persons several great quantities of potatoes with intention to sellfor gain, which he publicly did in several markets, aud that if this makes him a trader he committed an act of bankruptcy.” The judges are divided on the sufficiency of this verdict, some thinking that it presents the legal questions involved, others holding that the verdict must set out the quantity in which he traded, so that the court can judge by the extent as to whether he was a trader within the intent of a bankrupt act. (Mayo v. Archer, Strange R., 513.) In a modern case the finding is, that a builder did not construct *570 a house in the manner prescribed by his contract, but that the defendant “took possession” “without objection at the time, and appropriated the same to his own use.” Here it is plain that every fact directly “ established by the evidence,” and “ not the evidence establishing them,” is thus set forth in the verdict; yet two very able judges concur in holding the finding bad, because it is not found whether performance of the conditions was waived by the defendant. (Justices Harris and Comstock in Smith v. Brady, 17 H. Y. R., 173.) So where a verdict sets forth facts which imply an executor’s assent to the vesting of a legacy, we find that Chief-Justice Marshall holds that “ although .in the opinion of the court there was sufficient evidence in the special verdict from which the jury might have found the fact, yet they have not found it, and the court could not intend it.” (Barnes v. Williams, 11 Wheat. R., 415.) In most cases “ reasonable time” is a question of law, yet where a special verdict finds the specific time and nothing more, Chief-Justice Marshall holds it to be fatally defective. (Chesapeake Insurance Company v. Starke, 6 Cr. R., 268.)
Oases, too, are to be found which are directly opposed to each other, though the different courts are applying the same rule, and professing to be guided by the same principles. In the English case of Monkhouse v. Hay, (8 Price R., 256,) the verdict sets forth that a bankrupt had possession of a ship and appointed the captain and exercised all acts of ownership, but fails to find that he was the apparent owner. The Exchequer Chamber, per Chief-Justice Dallas,'holds that “sufficient facts are stated on this record to refer to the court the consideration of the question of law, whether the trader had such an apparent ownership as comes within the mischief intended to be remedied by the statute.” In the American case of Henderson v. Allen, (1 Hen. & Mun. R., 235,) the verdict sets forth that the defendant brought the plaiu tiffs as slaves into Virginia, and that he detained them there nine months, when he was forbidden by an order of a court to remove them, and they thus remained in the defendant’s possession in Virginia seven months more, but fails to fin'd that they were detained in the State twelve months by compulsion of the defendant, which would have rendered them free. The court of appeals holds this verdict “ uncertain and insufficient,” as setting forth the evidence and not the fact, though manifestly the only question of law was whether the de *571 tention under the order of a court should be deemed involuntary and not compulsión on the part of the defendant.
Conversely, if the jury in some of these cases had omitted from their verdict what the courts call evidence, and had contented themselves with finding nothing more than the ultimate fact, for the omission of which their verdicts were held bad, it is manifest that no question whatever would have been presented by the verdict for the court to pass upon, and the jury would in effect have determined the law as well as the fact. If, for instance, in the ease first cited, the jury had found that the farmer who likewise dealt in potatoes was or was not a trader, and had found nothing more, that would have disposed of the case; or if, in the case of the builder, the jury had found that the defendant waived the conditions of the contract, and had found nothing more, there would have been nothing left for a court to decide. Notwithstanding the frequency with which circumstantial facts have been termed evidence, there often is a debatable ground of circumstantial fact over which both jury and court must walk, the one to reach their ultimate conclusion of fact, and the other to apply intelligently its conclusion of law. In such cases the jury must set forth in their verdict the circumstantial facts which they have deduced from the eviden ce, and they must also continue their work of deduction until there is nothing left for them to pass upon. Their final deductions may indeed assume the form of legal conclusions, but they will nevertheless be of the nature of fact, whatever be their form, In like manner the court will go over the same circumstantial facts and deduce its conclusion, which, however closely it may resemble the conclusion of the jury, will be a conclusion of law.
Again, the definition of a special verdict and the rule of the Supreme Oourt alike require that the finding shall be free from evidence. But this cannot be taken literally. A deed, a will, a written contract, a record, is documentary evidence; yet such writings, when they involve judicial construction, must necessarily be set out in the verdict, that the court may have them before it to construe. (Lands Case, 7 C. Cls. R., 97.)
The usual definition of the requisites of a special verdict is therefore faulty and defective, misleading in what it omits, and contradicted by numberless cases in what it says.
A special verdict should set forth all facts established by the evidence, so far as they may bo necessary to delineate the rights *572 of the parties and present the questions of law involved in the issue; and it should set forth facts only, as distinguished from evidence, immaterial circumstances, argumentative inferences, or conclusions of law; but it should also set forth such documentary evidence as may be matter for judicial construction ; and, where the facts established by the- evidence are of the nature of circumstantial evidence, the verdict should not stop until the functions of the jury are exhausted, and the ultimate fact which may be deduced from the circumstantial facts is found.
But the more important question is, What matters can and cannot be reviewed through the medium of a special verdict.?
It is manifest that all the legal occurrences of a trial cannot be embodied in the verdict. Bor a verdict, be it general or special, is but the result which a jury have reached — a result and not the means or processes — of the jury, and not of the court. Therefore, a broad and clearly-defined distinction can immediately be drawn, viz, that it is only the abstract rights of the parties, irrespective of the evidence, irrespective of the trial, irrespective of all the processes by which they are ascertained, that can be carried to thé appellate court for judicial determination by the means of a special verdict.
In England it is for the most part only these abstract rights, that is to say, the rights which are submitted to litigation as distinguished from those which grow out of the litigation itself, that go up to the appellate courts. Neither writs of error nor special verdicts ever carried up the evidence, and bills of exceptions, which were never used there to the extent that they have been in this country, have recently been abolished. (Judicature Rules, Order 58, Rule 1.) In our American courts there has gradually grown up a practice of virtually retrying a case in an appellate court by means of a voluminous bill of exceptions, and the practice has grown into a mischief which encumbers and delays the administration of justice. A reform to a limited extent has lately been instituted by Congress, (Acts relating to territorial courts and cases in admiralty, 18 Stat. L., 27, 315,) but it was in fact begun by the Supreme Court when the rules regulating appeals from this court were framed. What, then, are the questions of law arising on a trial in this court, which the Supreme Court intended should or should not be reviewed by an appeal?
*573 The questions of law that may arise in trials at nisi prim may be grouped in five classes: 1. There are questions relating to the admissibility of evidence, and such questions can only be presented to an appellate court by means of a bill of exceptions. 2. There are questions as to whether the evidence is sufficient in law to sustain the verdict; and the consideration of such questions manifestly requires that all of the evidence shall be spread upon the record. 3. There are questions as to whether facts established by evidence, but nevertheless being in themselves nothing more than circumstantial evidence, are sufficient to establish the ultimate fact or ñual result of a jury’s deliberations ; and as to these questions we perceive no reason why they cannot be incorporated in and presented by a special verdict. 4. There are questions growing out of the offer of a party to prove a supposed material fact, and the refusal of the court to admit the evidence; and, although these cannot be presented by special verdict, they may be presented under the rule of the Supreme Court, by a request that the fact be found and the refusal of this court to find it. 5. There are the ultimate conclusions of law, which measure and determine the rights of the parties, and are always the same whether presented by demurrer, agreed statement, bill of exceptions, or special verdict.
That all questions of law cannot possibly be presented by means of the special verdict of a jury or the findings of a court is most clearly elucidated in the opinions of Mr. Justice Nelson in Arthurs v. Hart, (17 How. R., 6,) and of Mr. Justice Clifford in Suydam v. Williamson, (20 id., 427.) No two opinions of those learned and most experienced judges are more conclusive in demonstration or decided in expression. At the time when the rules regulating appeals from this court were framed, both of those judges were upon the bench and had delivered the opinions referred to. It is, therefore, plain that when the Supreme Court deliberately determined that a finding of facts in the nature of a special verdict should be the only means for reviewing a trial in this court, it was intended that those questions of evidence which can only be reviewed by means of a bill of exceptions should be committed absolutely to the judgment and decision of this court.
Notwithstanding the decisive terms of the rule, there has been considerable latitude allowed in practice by both courts. In *574 this court, when important questions arose which were decisive of a case, there was a reluctance on the part of the court to make its own decision final; and such questions, occasionally inserted in the findings, have been accepted and passed upon by the Supreme Court. In Nelson Anderson’s Case, (7 C. Cls. R., 121,) the question was as.to the competency of a witness, and a more preposterous question of law to be thrust into á special verdict could not well be imagined; yet this court stated it in the findings and the Supreme Court passed upon it, holding the witness competent. In Nahum Ward’s Case, (ib., 187,) the court omitted to find the essential fact whether certain Continental loan certificates were or were not countersigned by a commissioner for the State of Georgia, but stated the substance of the evidence on which the claimant relied; and the Supreme Court examined into and indeed were divided upon the sufficiency and effect of the evidence. In Hamilton Slawson’s Case, (8 id., 144,) this court found simply the circumstantial facts that the claimant purchased a steamboat after she had been impressed into the Confederate service and a subsequent conversation or agreement between him and an officer of the United States, yet the Supreme Court did not hesitate to draw as an inference of fact the conclusion that the claimant consented to the vessel’s being thus employed, and that the officer was not informed of the true state of affairs when he entered into the agreement to employ the boat. The case is the more noticeable that it turned entirely upon the fact-of the claimant’s consent, and no such consent was found by the verdict. In Moore’s Case, (11 id., 93,) the only question of law related to the manner in which the signature to a bill of sale had been proved. No fact “established by the evidence”'was a subject of contention, and the whole controversy turned on the admissibility of the evidence which did or did not establish the fact of a sale, nevertheless the Supreme Oonrt did not refuse to consider the appeal, and this question of evidence forms the only subject discussed in its opinion.
But the more recent practice of the Supreme Court has been to maintain the integrity of the rule. Manifestly one court or the other must be the final judge of questions of evidence. If the Supreme Court is to be the-judge, then the evidence must go up with the record, and a bill of exceptions be added to the findings of fact. If this court is to be the exclusive judge, then it *575 must assume the responsibility, and recognize the fact that its own action is necessarily final. Hereafter no attempt will be made to send up questions of law which cannot properly be presented by a finding of facts.
The present case also gives rise to another question of some importance concerning the presumptions which arise from the acts and duties of public officers. And, first, it may not be improper to remark that this court has never carried the theory of presumption to any such extent as seems to have been supposed. If the evidence were to show that a man fired a gun into a crowd of people, no presumption would arise that some one was actually killed or wounded. But if it were shown that the prisoner loaded his gun and discharged it into a crowd within range, and that at the same time some one in the crowd was killed by a bullet which might have been fired from that gun, it would hardly be called piling presumption upon presumption to say that the person in the crowd was killed by the man who discharged the gun, though the bullet was not positively identified. This is the extreme extent to which the doctrine of presumption has ever been carried by this court in captured-property cases. Seizure by an officer has never been held to raise a presumption that the property was forwarded, sold, and the proceeds paid into the Treasury. But where a capture was shown on the one hand, and a fund in the Treasury on the other, derived from property of the same kind captured about the same time, and brought from the same place or vicinity, there it was held that a presumption of law did arise, connecting the apparent cause with the apparent effect, viz, that the claimant’s property captured at one end of the line contributed in whole or in part to the fund derived from such property at the other end, and that the burden of proof was on . the defendants or the adverse claimants to repel the presumption. (Cone’s Case, 8 C. Cls. R., 329.) This doctrine, and to precisely the same extent, was understood by this court, by the law officers of the Government, and by the bar, to have been laid down by the Supreme Court in Crussel’s Case, (7 id., 276,) and the minority of that court were understood to have held precisely what has recently been laid down by the whole court in this case, (11 id., 313.) If the interpretation now given to the opinion of Chief-Justice Chase in Crussel’s Case is the meaning which the majority of- the court then ascribed to that de- *576 cisión, it is well-nigh impossible to understand upon wlxat the minority dissented.
But it is due to a just comprehension of the question to add., that the finding in this case was predicated upon this supposed presumption of law, and that when the presumption fell the finding necessarily fell with it. The case was one of those before referred to, wherein this court desired to submit to the appellate court the question whether the evidence was sufficient to sustain the verdict. The finding was as though a special verdict were to state that a person loaded a gun at 10 o’clock and discharged a gun into a crowd at 11, and that some one in the crowd was killed by a bullet about the same time, and were, for want of positive evidence, to omit finding that the prisoner inflicted the wound, leaving the uncertainty of the evidence to be holpen out by a supposed presumption of law. The absolute impossibility of having direct evidence in the case supposed would doubtless relieve a jury from all scruples in finding the ultimate fact. But in the case of a railway train carrying its load to the point of destination direct evidence is possible; yet in its absence, in a somewhat but not precisely similar case, the Chief Justice of the Supreme Court had said that the presumption was “that the quartermaster at Atlanta forwarded to the officer in charge of military railroad transportation the cotton of the claimant, and that this officer turned over the cotton to the agent at Hashville, by whom it was forwarded to Cincinnati and sold by the supervising agent there;” and that “if any evidence” to repel “this presumption” existed “it must be contained in the books of the Treasury Department, and these are under the control of the defendants.” (Crussel's Case, 7 C. Cls. R., 270.) It was therefore thought advisable to so frame the findings that the Supreme Court would be able to pass upon the question whether the presumption spoken of in Crussel’s Case extended to this.
But while the decision.of the Supreme Court in this case reverses the common understanding of Orussel’s Case, and does away with the supposed presumption of law which in effect shifted the burden of proof to the defendants, the case of Raymond, (11 C. Cls. R., 477,) decided by the. same court, on the same day, shows that the deeisiou in this case was intended to be confined to those presumptions which are made by courts from evideuce as distinguished from those conclusions or infer- *577 enees which may be drawn from the same evidence by juries. So far as the specific or circumstantial facts were concerned, this case was the stronger of the two. In it had been found that the claimant’s cotton was placed in a warehouse under military control, beside a military railroad ; that the warehouse had been emptied; that cotton had gone forward on the road toward Nashville, the great cotton depot of the region, and that cotton had been received there coming from the same region of country by the same road, aud belonging to unknown owners. In Raymond’s Case the cotton was found to have been loaded on unknown vessels, (not even shown to have been under military control,) at Haines’s Bluff, on the Yazoo, and that it was never seen again. But in this case the connecting link was left to legal presumption, while in the other this court found as a fact that the cotton “might, and amid the circumstances of the case naturally would, have gone into the mass at Vicks-burgh, and constituted a part of the cotton received by the Treasury agent at that place“ and upon these facts and presumptions,” “ though without there being direct proof of the ultimate fact,” the court also found “ that the cotton owned by the claimant constituted a part of the cotton received by the Treasury agent at Yicksburgh,- and contributed to the fund.” This conclusion of fapt the Supreme Court regarded as sustained by the evidence; that is to say, by the circumstantial facts upon which is was founded.
The difficulties which this court has had to contend with in administering the captured property fund are illustrated anew in this case. In Price’s Case, (7 C. Cls. R., 567,) the court bestowed more labor in making up a comprehensive account of the Northern Georgia cotton-funds than probably was ever expended. by a court on a fund in equity without the aid of a master or professional accountant. Now, after the lapse of eleven years from the ending of the rebellion, and five years from the account stated in Price’s Case, a report comes from the Treasury showing, for the first time, that a portion of two funds was paid away by order of the Secretary of the Treasury while the proceeds were yet in the hands of the supervising agent. This remark is not intended as a reflection upon the officers of the Treasury, whose ministerial duties simply require them to send up the specific information from time to time called for by parties. The truth is that the magnitude and in- *578 tricacy of tliese captured-property accounts were never duly appreciated, and this court, being left without the power of an ordinary court administering a fund in equity to compel at the outset a complete and intelligible account of the entire fund, has been obliged to deal with such information as from time to time has been laid before it.
We have now reviewed the general-account stated in the Price Case making such corrections as subsequent information has suggested; but it is proper to add that the internal-revenue tax and custom-house fees, erroneously deducted from all of the funds, have ouly been ascertained and restored in the second fund.
The judgment of the court is that the claimants recover the proceeds of seven bales of cotton, at $61.8.84 per bale, amounting to $4,331.88, and forming a charge on the third fund in the Price Case.
Drake, Oh. J., agreed in the conclusion that the claimant should recover.
Luring- and Peck, JJ., were absent when the decision was announced, but took part in the consideration of the case, and agreed in the opinion read.